UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                 :

**KIM A. EVANS**,

                           Plaintiff,

          – against –

**COMMISSIONER OF SOCIAL SECURITY**,

                         Defendant.

------------------------------------------------------------- X

                    **MEMORANDUM DECISION AND ORDER**

                    21-CV-4876 (AMD)

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff challenges the Social Security Commissioner's decision that she was not disabled for the purpose of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (ECF No. 10-1 at 6.) For the reasons set forth below, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion and remand the case for further proceedings.

## BACKGROUND

      The plaintiff applied for DIB on October 16, 2019, alleging disability since March 27, 2019, caused by major depressive disorder, generalized anxiety disorder, and lumbar degenerative disc disease. (Tr. 10, 13.) The Social Security Administration ("SSA") denied her claim after initial review on January 10, 2020, and upon reconsideration on May 12, 2020. (Tr. 10.) The plaintiff filed a written request for a hearing on July 10, 2020. (Tr. 10.) ALJ Patrick Kilgannon held a telephonic hearing on October 22, 2020, at which a vocational expert ("VE") appeared, and the plaintiff—who was represented by counsel—testified. (Tr. 10.) In a February 17, 2021, decision, ALJ Kilgannon determined that the plaintiff was not disabled and denied her claim. (Tr. 7-23.)

The ALJ concluded that: (1) the plaintiff had not engaged in substantial gainful activity since March 27, 2019, the alleged onset date, (2) the plaintiff's severe impairments included major depressive disorder, generalized anxiety disorder and lumbar degenerative disc disease, and that (3) those impairments, whether considered individually or in combination, did not meet or equal any of those listed in Appendix 1 of the regulations.  (Tr. 13.)  The ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform "light work" with a series of additional limitations:

> the [plaintiff] is limited to a light level of physical exertion with an ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and could sit for about 6 hours and stand/walk for 6 hours in an 8 hour workday with normal breaks, and should avoid climbing ladders, ropes and scaffolds, but could occasionally climb ramps and stairs, could occasionally balance, stoop, kneel, crouch and crawl, and should avoid hazards such as moving machinery and unprotected heights.  The claimant would also only be capable of performing simple routine tasks, could sustain concentration for simple routine tasks, can maintain a schedule, can make simple work-related decisions, could occasionally interact with supervisors, coworkers and the general public, and could occasionally adapt to changes in the work setting.

(Tr. 15.)

Finally, citing the VE's testimony, the ALJ ruled that the plaintiff could not do her past relevant work as an administrative assistant or as a personnel recruiter (Tr. 21-22), but could do other jobs, including routing clerk, photocopy machine operator, and "price marker."  (Tr. 22.)

The Appeals Counsel denied plaintiff's request for review of the hearing decision on August 19, 2021, rendering the ALJ's denial the "final decision" of the Commissioner and subject to judicial review.  (Tr. 1-3.)  The plaintiff filed this action on August 30, 2021 (ECF No. 1), and both parties moved for judgment on the pleadings.  (ECF Nos. 10, 14.)

## I.    The ALJ's Review of Medical Opinion Evidence

There are six relevant sources of medical opinions regarding the plaintiff's mental health, from four treating providers, two consultative examiners, and one non-examining medical expert.

a.      **Treating Physician Opinions**[1]

i.      *Dr. David Belser, Ph.D - Treating Psychologist*

Dr. David Belser, a psychologist, began treating the plaintiff in November 2017.  (Tr. 584.)  In a July 25, 2019 narrative report, Dr. Belser concluded that the plaintiff had a severe depressive and anxiety disorder, which caused her to be "mostly in bed on a daily basis," and that she had "to be urged to get up and conduct activities."  (Tr. 658.)  She had "severe anxiety and panic throughout each day," and her conditions caused her financial problems, housing problems, and family problems.  (Tr. 658.)  As a result, Dr. Belser found the plaintiff to be "unable to work in any capacity."  (Tr. 658.)

Dr. Belser completed a mental capacity questionnaire on October 17, 2019, in which he diagnosed the plaintiff with Major Depression, Generalized Anxiety Disorder and Panic Disorder, which "completely incapacitate[d] her," leaving her unable to work or perform simple, repetitive tasks.  (Tr. 399-402.)  Dr. Belser found that the plaintiff was "markedly limited" in her ability to understand and remember detailed instructions, as well as "markedly limited" in her ability to carry out detailed instructions, concentrate for extended periods of time, remain on a schedule, attend work consistently or be on time, maintain an ordinary routine without special supervision, work with others without being distracted by them and complete a normal workday or workweek without interruptions from psychological based symptoms.  (Tr. 400-01.)  Dr. Belser also found that the plaintiff was "markedly limited" in her ability to interact appropriately with the public and her ability to maintain socially appropriate behavior and maintain basic standards of neatness and cleanliness.  (Tr. 401.)  Finally, Dr. Belser determined that the plaintiff was "markedly limited" in her ability to respond appropriately to changes at work and her ability

---

[1] Letitia Brown, LCSW-R, the plaintiff's treating psychotherapist submitted medical records from March 6, 2017 to June 13, 2017.  (Tr. 632-655.)  The ALJ did not consider these records in his report.

to set realistic goals or make independent plans.  (Tr. 402.)  Dr. Belser filled out a second mental

capacity questionnaire on June 2, 2020, in which he again found that the plaintiff's conditions

"completely incapacitate[d] her," and that she could not work.  (Tr. 738-40.)  Dr. Belser found

the plaintiff to be "markedly limited" in the same ways as in his prior evaluation.  (Tr. 738-40,

765.)

Dr. Belser completed a third mental capacity questionnaire on September 29, 2020.  (Tr.

586-91.)  Dr. Belser found, once again, that the plaintiff could not work and had a "complete

inability to function independently outside the area of [her] home."  (Tr. 595-96.)  Dr. Belser

explained that the plaintiff had "no useful ability" to remember locations and work-like

procedures, to understand, remember, and carry out detailed instructions, to perform activities

within a schedule, maintain regular attendance and be on time, and to work with or near others

without being distracted by them.  (Tr. 588-91.)

ALJ Kilgannon found Dr. Belser's opinion "less persuasive," determining that the

doctor's findings were "inconsistent with [the] mental status exams and his treatment notes," and

that they were "conclusory and lack[ed] objective support."  (Tr. 16-17.)

## ii.    Dr. Paris Arianas, MD - Treating Psychiatrist

Dr. Arianas, the plaintiff's treating psychiatrist, submitted the plaintiff's medical records

from January 2020 to October 2020.  (Tr. 19.)  During an examination on January 29, 2020, Dr.

Arianas diagnosed the plaintiff with severe depression and possible bipolar affective disorder.

(Tr. 558-59.)  Because he was concerned about the onset of a "psychiatric disturbance," Dr.

Arianas told the plaintiff to go to the emergency room for evaluation.  (Tr. 558-59.)  The plaintiff

went to the ER but did not want to be admitted.  (Tr. at 560, 785.)  According to Dr. Arianas'

treatment notes, he ultimately diagnosed the plaintiff with bipolar affective disorder, depression

and anxiety.  (Tr. 830-31.)  Dr. Arianas did not provide an opinion on the plaintiff's ability to

work.  The ALJ did not consider the merits of Dr. Arianas' treatment notes and therefore did not afford them any specific weight.

### iii.     Rosemary Luke, NPP - Treating Psychiatric Nurse Practitioner

Nurse Practitioner Rosemary Luke submitted treatment records from February 2018 to December 2019.  (Tr. 19.)  NP Luke diagnosed the plaintiff with bipolar disorder and in an April 2018 letter, stated that the plaintiff was not medically capable of returning to work.  (Tr. 19.)  NP Luke also wrote that the plaintiff was "alert and oriented with clear and spontaneous speech, appropriate behavior, normal psychomotor activity, normal thought process and content, intact memory and good abstract thinking" and that her cognitive exams were intact.  (Tr. 19.)  The ALJ described NP Luke's conclusion as "less persuasive," because she rendered it two months after the plaintiff started treatment.  (Tr. 19.)  In addition, the ALJ concluded that the findings were "not supported by the fairly benign mental status exams of Ms. Luke and by other doctors." (Tr. 19.)

### b.     Consultative Opinions

### i.     Dr. David Schaich, Ph.D - Consultative Examining Psychologist

The consultative psychologist, Dr. Schaich, examined the plaintiff in December 2019, and issued a report in which he noted that the plaintiff "had sleep difficulty, fluctuating appetite, daily depressed mood, crying spells, guilt, hopelessness, loss of interests, irritability, loss of energy, worthlessness, diminished self-esteem, concentration problems, diminished sense of pleasure, and social withdrawal."  (Tr. 18.)  He also noted that the plaintiff had anxiety symptoms, including panic attacks with heart palpitations, and that she reported symptoms of "mania" and concentration problems.  (Tr. 18.)  Dr. Schaich found that the plaintiff had "fair" social skills, that she had "below average cognitive functioning but was otherwise normal," that her attention, concentration and memory were all "intact," and she had good insight and

judgment. (Tr. 18.) Dr. Schaich diagnosed unspecified depressive disorder and unspecified anxiety disorder but ruled out a bipolar related disorder. (Tr. 18.) Finally, he found that the plaintiff had no trouble understanding or applying simple or complex instructions, had no limitations in her reason and judgment to make work-related decisions. (Tr. 18.) Dr. Schaich concluded that "[t]he results of the exam appear consistent with psychiatric problems but in and of itself does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (Tr. 19.) The ALJ found Dr. Schaich's opinion to be "somewhat persuasive," because it was "based upon an in person evaluation and noted limitations consistent with the doctor's exam." (Tr. 18.) However, the ALJ found it to be "not more persuasive since the record shows the claimant has a greater degree of limitation." (Tr. 18.)

                    ii.      *Dr. Aaron Williams, Psy.D - Non-Examining Medical Expert*

       Dr. Williams, a medical expert, did not examine the plaintiff. Instead, he reviewed her medical records and in November 2020, gave responses to medical interrogatories. He concluded that the plaintiff was moderately impaired by depressive disorder and generalized anxiety disorder. He found that she had "no limitations" in her ability to "understand[], remember[] or carry[] out simple instructions or mak[e] judgments on simple work-related decisions," that she had "mild limitations" in her ability to "understand[], remember[] and carry[] out complex instructions," and that she had "moderate limitations" in her ability to "mak[e] judgments on complex work-related decisions, interact[] appropriately with supervisors, coworkers and the public, and respond[] appropriately to changes in a routine work setting." (Tr. 20.) According to Dr. Williams, the plaintiff "would benefit from working in a role with limited social demands and that is repetitive in nature to reduce stress." (Tr. 20.) The ALJ found these conclusions to be "persuasive" because they were supported by the "entire record" and because

Dr. Williams "noted limitations that are consistent with the mental status exams of the consultative psychologist as well as those of the treating psychiatrist and psychologist." (Tr. 20.)

### iii.      State Agency Medical Consultants

The State Agency medical consultants examined the plaintiff in January 2020 and April 2020. (Tr. 18.) The consultants found that the plaintiff had "mild limitations in concentrating, persisting and maintaining pace and in adapting or managing herself, moderate limitations interacting with others, and no limitations understanding, remembering or applying information." (Tr. 18.) They concluded that other than moderate limitations working with others, the plaintiff "has no other significant mental work[-]related functional limitations." (Tr. 19.) The ALJ found this conclusion to be "persuasive as the limitations noted are consistent with the generally healthy mental status exams of the consultative psychologist as well as those of the treating psychiatrist and psychologist." (Tr. 19.)

### STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The Court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "[S]ubstantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

"Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,' '[w]here an error of law has been made that might have affected the

disposition of the case,'" the court will not defer to the ALJ's determination.  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).  Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).  Moreover, the district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations."  *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citations omitted).

## DISCUSSION

The plaintiff contends that the ALJ's decision was not supported by substantial evidence and that the ALJ did not apply the appropriate legal standards.  (ECF 10-1 at 9-16.)

An ALJ considers five factors to determine whether a medical opinion is persuasive: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion.  20 C.F.R. §§ 404.1520c(c)(1)-(c)(5).  After considering these factors, the ALJ must explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the plaintiff's] case record."  *Id.* § 404.1520c(b).[2]

The most important factors are supportability and consistency.  *Id.* § 404.1520c(b)(2). Although the ALJ is not required to explain his consideration of all five factors, he must discuss these two.  *Id.*  "The 'supportability' factor asks how well a medical source supported their

---

[2] The "treating physician rule" does not apply because the plaintiff's claim was filed after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§404.1520c(a), 416.920c(a).

opinion(s) with 'objective medical evidence' and 'supporting explanations.'" *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  As for consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2)).  If the ALJ does not adequately "explain the supportability or consistency factors, or bases [his] explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (internal quotation and citation omitted).

**I.      Duty to Develop the Record**

An ALJ has "regulatory obligations to develop a complete medical record before making a disability determination." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *see* 20 C.F.R. § 416.912(b)(1).  That obligation results from the non-adversarial nature of the instant proceedings and exists "even when . . . the claimant is represented by counsel." *Pratts*, 94 F.3d at 37. Although the plaintiff did not challenge the sufficiency of the record, the Court finds that the ALJ did not adequately develop the record. *See Sanchez v. Saul*, No. 18-CV-12102, 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020) ("As a threshold matter, and regardless of the fact that Plaintiff did not raise an express challenge to the adequacy of the Record, this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."), *R. & R. adopted*, 2020 WL 1330215 (S.D.N.Y. March 23, 2020).  "The duty to develop the record is particularly important where an applicant alleges [she] is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." *Merriman v. Commissioner*, No. 14-CV-3510, 2015

9

WL 5472934, at *19 (S.D.N.Y. Sept. 17, 2015) (quoting *Hidalgo v. Colvin*, No. 12-CV-9009, 2014 WL 2884018 at *4 (S.D.N.Y. June 25, 2014) (internal alterations and quotation marks omitted)).

The ALJ did not obtain a medical source opinion from the plaintiff's treating psychiatrist, Dr. Arianas, which was error.  "The ALJ must obtain the treating physician's opinion regarding the claimant's alleged disability; 'raw data' or even complete medical records are insufficient by themselves to fulfill the ALJ's duty . . . . It is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and severity of a disability that is to be given deference.  *Telesco v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 336, 353 (S.D.N.Y. 2021), *report and recommendation adopted*, No. 20-CV-8376, 2022 WL 719271 (S.D.N.Y. Mar. 10, 2022) (citing *Dimitriadis v. Barnhart*, No. 02-CV-9203, 2004 WL 540493, at *9 (S.D.N.Y. Mar. 17, 2004) (emphasis in original)).

Dr. Arianas diagnosed the plaintiff with bipolar affective disorder, anxiety and depression.  Moreover, Dr. Arianas sent the plaintiff to the emergency room because he was concerned about the onset of a "psychiatric disturbance."  (Tr. 558-59.)  It does not appear that the ALJ received or requested a medical opinion from Dr. Arianas regarding the plaintiff's work-related limitations.  The ALJ's failure to request this information was error and warrants remand.  *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (remanding due to ALJ's failure to obtain "adequate information from [claimant's] treating physician"); *Oliveras Ex Rel. Gonzalez v. Astrue*, No. 07-CV-2841, 2008 WL 2262618, at *6 (S.D.N.Y. May 30, 2008), *R. & R. adopted*, 2008 WL 2540816 (S.D.N.Y. June 25, 2008) (remanding so the ALJ could make all reasonable efforts to obtain treating physician's opinion).  On remand, the ALJ should request Dr. Arianas' medical opinion about the plaintiff's ability to work.

In addition, the ALJ did not have all of Dr. Besler's treatment notes when he made his decisions.  Dr. Besler explained in a March 29, 2018 letter that the plaintiff had attended 15 weekly psychotherapy sessions after her first consultation in November 2017.  (Tr. 484.)  Dr. Besler concluded, after these sessions, that the plaintiff was "totally compromised by her psychopathology."  (Tr. 484.)  However, the notes from those sessions are not in the record.  An ALJ must develop the plaintiff's complete medical history for at least the twelve-month period before the date that the plaintiff filed for disability.  *Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 83 (2d Cir. 2009); *see also* 42 U.S.C. § 423(d)(5)(B) (providing that an ALJ "shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability").  Moreover, if an ALJ receives records that "lack any necessary information, the ALJ should recontact the treating physician."  *Oliveras Ex Rel. Gonzalez v. Astrue*, No. 07-CV-2841, 2008 WL 2262618, at *6 (S.D.N.Y. May 30, 2008), *R. & R. adopted*, 2008 WL 2540816 (S.D.N.Y. June 25, 2008).  In this case, the ALJ did not have all of Dr. Belser's records when he made his decision.  On remand, the ALJ should obtain Dr. Belser's complete records so that the record is fully developed.

Finally, although the ALJ did not mention it, NP Luke's treatment notes from her twelve sessions with the plaintiff are largely illegible.  (Tr. 511-530.)  The ALJ found NP Luke's typewritten April 2018 letter, in which she concluded that the plaintiff was "not medically capable of returning to work" (Tr. 524) "less persuasive" because she made that conclusion only two months after the plaintiff started treatment.  (Tr. 19.)  The ALJ also determined that the April 2018 conclusion was not supported by NP Luke's "benign" mental status exams.  (Tr. 19.)  Since the ALJ did not refer to the treatment notes, it appears that he did not consider them.  "When records produced are illegible but relevant to the plaintiff's claim, a remand is warranted to

11

obtain supplementation and clarification." *Johnson v. Colvin*, No. 15-CV-649, 2016 WL 4472749, at *6 (W.D.N.Y. Aug. 25, 2016); *see also Westfall v. Saul*, No. 18-CV-1243L, 2020 WL 1189918, at *2 (W.D.N.Y. Mar. 12, 2020) ("The ALJ's discrediting of Dr. Sharma's partially-illegible June 15, 2015 opinion without recontacting her for clarification or elaboration, and his failure to consider any of the factors relevant to the evaluation of a treating physician's opinion, is error."). On remand, the ALJ should clarify whether he considered NP Luke's treatment notes. If he did, he should specify how he used them to reach his conclusion. If he found them to be illegible, he should seek to have them transcribed so that he can read them.

## II.     The ALJ Did Not Properly Evaluate The Medical Opinions Of Record

The plaintiff argues that the ALJ erred in rejecting Dr. Besler's opinion, because Dr. Belser was "best positioned to assess the plaintiff's mental capacity for work-related function" as he "examined, tested, and treated the plaintiff consistently for 2 years." (ECF No. 10-1 at 11.) The plaintiff also argues that the ALJ should not have deferred to Dr. Williams and Dr. Schaich's medical opinions. Finally, the plaintiff faults the ALJ for citing the plaintiff's ability to carry out certain activities of daily life. (*Id.* at 11, 15.) The defendant argues that the ALJ's finding that "Dr. Besler's opinions of up to extreme mental dysfunction was inadequately supported by the psychologist's own examination findings" was proper. (ECF No. 14-1 at 21.)

### a.  Supportability

In finding Dr. Belser's opinion "less persuasive," the ALJ stated that "[w]hile Dr. Belser noted severe symptoms in functioning, the mental status exams . . . largely indicate the claimant's thought process to be goal oriented, her thought content to be appropriate, with claimant motivated and possessing cognitive and behavioral focus." (Tr. 16.) The treatment notes, however, only list two options under the category of "thought process:" "goal-oriented" or "distorted." That plaintiff's thought process was goal-oriented does not mean that the plaintiff

12

did not have the anxiety and depression Dr. Belser observed.  Indeed, although Dr. Besler consistently noted that the plaintiff was goal-oriented, he diagnosed her with debilitating depression and anxiety.  Thus, in an April 2020 psychological evaluation, Dr. Belser described the plaintiff's thought processes to be "logical and goal-oriented" with "no evidence of thought disorder," and at the same time concluded that the plaintiff's mood was "significantly anxious and depressed," and that her "comprehension, memory and logical and abstract reasoning" were below normal.  (Tr. 743.)  In other words, the plaintiff's goal-oriented thought process did not contradict his diagnosis that the plaintiff was severely depressed and anxious, and unable to work as a result.

The ALJ also found that Dr. Belser's determination that the plaintiff was "completely [unable] to function" was not consistent with the plaintiff's "history of conservative treatment and the wide array of activities of daily living that she reported in her function report and to the consultative examiners," including "caring for her children, assisting with their schoolwork, preparing meals, driving her children to school, taking her children to medical appointments and going to her own doctor appointments, watching TV and movies, straightening up around the house, doing laundry, washing dishes, taking out the trash and financially supporting her spouse."  (Tr. 17.)

The "ALJ's heavy reliance on [the] [p]laintiff's reported daily activities of self-care, child-care, and hobbies does not provide as sufficient basis for discounting . . . well-supported expert [medical opinions] . . . regarding . . . [the] ability to sustain a job."  *Mahon v. Calvin*, No. 15-CV-2641, 2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31, 2017).  "The Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'"  *Colon v. Astrue*, No. 10-CV-3779, 2011 WL 3511060, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting

*Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)).  The fact that plaintiff could handle

routine activities is not inconsistent with Dr. Belser's medical assessment that she could not

work because of severe anxiety and depression.  "Indeed, it is well-settled that the performance

of basic daily activities does not necessarily contradict allegations of disability, as people should

not be penalized for enduring the pain of their disability in order to care for themselves." *Cabibi*

*v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (internal quotation marks and citations

omitted); *see also Sutton v. Comm'r of Soc. Sec.,* No. 20-CV-3441, 2022 WL 970748, at *7

(E.D.N.Y. Mar. 31, 2022) (finding that plaintiff's ability to perform simple tasks does not

discredit the medical assessment that her psychiatric and cognitive problems "may significantly

interfere with [her] ability to function on a daily basis"); *Kirby v. Saul*, No. 20-CV-2270, 2021

WL 4197264, at *3 (E.D.N.Y. Sept. 15, 2021) ("[N]either [plaintiff's] ability to perform personal

tasks—like showering, getting dressed, and going to doctor's appointments—her 'conservative'

treatment choices, nor her decision to return to work after a period of disability amounts to

substantial evidence.").

      Moreover, although the plaintiff stated she could perform some daily activities for herself

and her children, she also testified at the hearing that she ordered food 95% of the time (Tr. 66),

had not vacuumed in years (Tr. 67), and wore "the same things over and over again."  (Tr. 67.)

Although the ALJ found that the plaintiff had "no limitation maintaining personal hygiene and

appropriate attire" (Tr. 18), the plaintiff testified that she wore pajamas almost all the time and

brushed her teeth and showered only for doctors' appointments.  (Tr. 66.)  For this reason,

medical observations that the plaintiff was "well-groomed" do not reflect of her overall hygiene.

      In short, the ALJ's finding that Dr. Belser's opinion was "less persuasive" because they

are "not consistent with [his] treatment records" (Tr. 16), is inconsistent with the record and not

supported by substantial evidence.  "[I]t is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks omitted).  "The ALJ remains a layperson and should not assume the mantle of a medical expert, whether he does so in the context of the treating physician's rule or when addressing the supportability and consistency of a medical opinion."  *Bienvenido J.P. v. Comm'r of Soc. Sec.,* No. 20-CV-9270, 2022 WL 901612, at *5 n.3 (S.D.N.Y. Mar. 28, 2022) (internal quotation marks omitted); *see also Mackey v. Comm'r of Soc. Sec.*, 519 F. Supp. 3d 151, 153 (E.D.N.Y. 2021) ("Such substitution of the ALJ's armchair views of medical evidence is clearly impermissible.").

### b.    Consistency

In addition, the ALJ found that Dr. Besler's findings were not consistent with the findings of the treating psychiatrist, Dr. Arianas, and consultative psychologist, Dr. Schaich.  (Tr. 17.)[3] However, those opinions are largely consistent.  Dr. Arianas diagnosed the plaintiff with depression and bipolar affective disorder.  (Tr. 782.)  While Dr. Arianas noted after some examinations that the plaintiff had "good insight and judgment" (Tr. 25), he was consistent in his observations that the plaintiff was depressed, and in January 2020 directed the plaintiff to go to the emergency room because of her severe depression.  (Tr. 543-556; 782-793.)[4]

Dr. Schaich also noted that the plaintiff reported symptoms of depression.  During his examination, the plaintiff explained that she had depression for three years and experienced daily depressed moods, crying spells, guilt, hopelessness, and social withdrawal, among other

---

[3] As noted above, the ALJ did not seek Dr. Arianas' opinion.

[4] While the ALJ noted the emergency room visit, he cited Dr. Arianas' March 2020 notes that the plaintiff "felt better."  (Tr. 25.)

symptoms.  (Tr. 447-48.)  The plaintiff also reported having panic attacks two to three times per week as well as symptoms of mania.  (Tr. 448.)

Dr. Belser's conclusions are also supported by other medical sources in the record.  In an April 2018 letter, NP Luke concluded that the plaintiff could not work.  (Tr. 529.)  While the ALJ found her opinion "less persuasive," because it was given two months into treatment (Tr. 24), NP Luke conducted a full history and evaluation of the plaintiff and saw her two more times in those two months, and was thus well-situated to determine whether the plaintiff could work. (Tr. 528-43.)[5]  The ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion."  *Balsamo*, 142 F.3d at 81.  Finally, Dr. Williams found that the plaintiff's records supported her diagnoses of major depressive disorder and generalized anxiety disorder.  (Tr. 853.)

While "ALJs are no longer directed to afford controlling weight to treating source opinions," the regulations "still recognize the foundational nature of the observations of treating sources."  *Soto v. Comm'r of Soc. Sec*., No. 19-CV-4631, 2020 WL 5820566, at *4 (E.D.N.Y. Sept. 30, 2020) (quoting *Shawn H. v. Comm'r of Soc. Sec*., No. 19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)).  In fact, the updated regulations "do not amount to much of a practical change [from the treating physician rule] in terms of the analysis itself . . . . A treating physician's opinion may still be more persuasive because he or she will have examined the plaintiff more frequently and will presumably have a more substantial relationship with the patient.  Thus, although there is no 'special' deference given, the treating relationship is one of the factors to be considered in the analysis under the new regulations."  *Jesse P. v. Comm'r of Soc. Sec*., No. 20-CV-1361, 2022 WL 2079080, at *5 (N.D.N.Y. June 9, 2022) (citation omitted).

---

[5] As explained above, she had additional notes that the ALJ does not appear to have considered.

The treating doctor's opinion, in cases involving mental impairments, are especially valuable. *See Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x. 119, 122 (2d Cir. 2018) ("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs.  Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Corbeil v. Saul*, No. 17-CV-1321, 2019 WL 2590606, at *5 (W.D.N.Y. June 25, 2019) ("Where, as here, mental health treatment is at issue, the opinions of treating professionals take on added importance.  A mental health patient may have good days and bad days; she may respond to different stressors that are not always active.  Thus, the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination.").  The Second Circuit has cautioned that "ALJ's should not rely heavily on the findings of a consultative physician after a single examination," finding that "[t]his concern is even more pronounced in the context of mental illness where, as discussed above, a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health."  *Estrella v. Berryhill*, No. 17-3247, 2019 WL 2273574, *5 (2d Cir. 2019).

In this case, Dr. Schaich saw the plaintiff only once, the State Agency saw her twice, and Dr. Williams never examined the plaintiff.  On the other hand, Dr. Belser saw the plaintiff weekly beginning in November 2017 (Tr. 586), Dr. Arianas was the plaintiff's treating psychiatrist from January 2020 to October 2020 (Tr. 19), and NP Luke treated her from February 2018 to December 2019.  (Tr. 19.)  The ALJ's decision to discount the opinions of the mental health professionals with long-standing relationships with the plaintiff in favor of consultants that examined the plaintiff once or twice, if at all, was error.

For these reasons, the ALJ's conclusion that Dr. Belser's and NP Luke's opinions were unsupported is not reflective of the record, and accordingly, not supported by substantial evidence.

## III.   Application of S.S. Rul. 85-15

The plaintiff claims that S.S. Rul. 85-15 requires a finding of disability when the claimant "has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and unusual work situations[.]"  (ECF No. 10 at 18.)  However, this rule is inapplicable here.  The plain text states the rule applies only to the "evaluation of solely non-exertional impairments."  SSR 85-15, 1985 WL 56857, at *2 (Jan. 1, 1985).  The Second Circuit construed this language to mean that SSR 85-15 "does not apply to a case . . . in which the claimant suffers from a combination of exertional and non-exertional impairments."  *Roma v. Astrue*, 468 F. App'x. 16, 20 (2d Cir. Jan. 19, 2012) (summary order).

Here, the plaintiff has both exertional and non-exertional limitations as a part of her RFC.  Her exertional limitation is the lumbar degenerative disc disease.  (Tr. 17.)  Accordingly, S.S. Rul. 85-15 does not apply.

## CONCLUSION

For these reasons, this case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge


Dated:  Brooklyn, New York
        March 28, 2023